**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Chambers of**<br>**Leda Dunn Wettre**<br>United States Magistrate Judge | Martin Luther King Federal Building<br>& U.S. Courthouse<br>50 Walnut Street<br>Newark, NJ 07101<br>(973) 645-3574 |

May 17, 2023

To:   All counsel of record

**LETTER OPINION AND ORDER**

RE:   *Farrow v. U.S. Specialty Insurance Co., et al.,*
      Civil Action No. 20-cv-6588-SDW-LDW

Dear Counsel:

Before the Court is the motion of plaintiff Beth Farrow, as Executrix of the Estate of Andrew Topp ("Plaintiff"), for leave to file a Third Amended Complaint to assert a negligence claim against the remaining defendants and to remove the dismissed defendants from the pleading. (ECF No. 91).  Defendants U.S. Specialty Insurance Company, HCC Insurance Holdings, Inc., and Crawford & Company d/b/a Aviation LS (collectively, the "Insurance Defendants") oppose the Motion.  (ECF No. 93).  Oral argument was held on April 5, 2023.  (*See* ECF No. 102).  Plaintiff's request thereafter for supplemental briefing was granted.   Having now considered the parties' submissions, including the post-argument supplemental briefing (ECF Nos. 91, 93, 94, 103, 104), and for the reasons set forth below, plaintiff's motion is **DENIED**.

**I.      Background and Procedural History**

This wrongful death and survival action arises out of the death of pilot Andrew Topp, who died in an aircraft accident in New Jersey on May 2, 2018.  (*See* Second Amended Complaint, "SAC," ECF No. 8).  Mr. Topp was flying solo on a small aircraft owned by his limited liability company when it experienced engine failure shortly after takeoff and crashed in a wooded area in West Milford, New Jersey.  He died at the scene of the crash.  (*Id.* ¶¶ 5-7, 27-31, 83).

Beth Farrow, the decedent's sister, brings this action in her capacity as Executrix of his estate.  (*See* ECF No. 67 ¶ 15).  She initially filed suit in the Superior Court of New Jersey, Law Division, Passaic County.  (ECF No. 1 ¶ 1).  In that lawsuit, she alleged *inter alia* that the Insurance Defendants intentionally spoliated or fraudulently concealed the physical evidence of the crash by destroying the aircraft wreckage despite knowing that the estate was likely to file a wrongful death action against various parties involved in the maintenance and service of the aircraft, including individuals and entities also insured by the Insurance Defendants.  (*See* First Amended Complaint, "FAC," ECF No. 1-2 ¶¶ 13-14, 62-63, 91-101).

The action was removed to this Court in May 2020 on the basis of diversity jurisdiction after plaintiff amended the Complaint to implead Columbia Aircraft Services Inc., Wurtsboro Flight Management LLC, and mechanic Daniel Yates, (collectively, the "Maintenance Defendants"), alleging that their maintenance, service, repairs and/or inspections of the aircraft were negligent and a cause of Topp's fatal accident. (Notice of Removal, ECF No. 1 ¶¶ 2, 14-15; FAC ¶¶ 87, 105-109). Plaintiff then filed a Second Amended Complaint, which is the current operative pleading. (ECF No. 8). The SAC alleges wrongful death and survival claims against all defendants; a fraudulent concealment claim against the Insurance Defendants; negligence and breach of express and implied warranties claims against the Maintenance Defendants; and a strict liability claim solely against defendant Columbia Aircraft. (*Id.*).

The undersigned conducted an initial scheduling conference on November 17, 2020 and entered a Pretrial Scheduling Order setting a deadline of May 28, 2021 for the completion of fact discovery and January 15, 2021 deadline for any request for leave to amend pleadings. (*See* ECF No. 46). The Court conducted status conferences on February 9, 2021, May 11, 2021, July 13, 2021, September 27, 2021, October 28, 2021, January 5, 2022, May 4, 2022, and October 27, 2022. The undersigned granted the parties' several requests to extend the fact and expert discovery deadlines (*see* ECF Nos. 61, 63, 73, 78, 83, 89), but no party ever having sought an extension of the deadline to amend pleadings, the January 15, 2021 deadline set by the Pretrial Scheduling Order lapsed without extension. (ECF No. 46).

All but the Insurance Defendants have now settled with plaintiff and have been dismissed from the action. (*See* ECF Nos. 47, 71). Before Columbia Aircraft settled with the plaintiff, however, the Court adjudicated its motion to dismiss plaintiff's claims against it, including a negligence claim that relied on a negligent spoliation theory similar to the new negligence claim plaintiff now seeks to assert against the Insurance Defendants. (*See* ECF Nos. 12, 49). The Honorable Susan D. Wigenton, U.S.D.J., granted the motion to dismiss to the extent that plaintiff asserted a claim of negligent spoliation, as negligent spoliation is not recognized as an independent tort under either federal or New Jersey state law. (*See* ECF No. 49 at 4). The District Court further held that even applying traditional negligence principles, the negligent spoliation claim could not succeed because, as a general rule, "there is no duty to preserve evidence" and plaintiff could not establish that such a duty arose from "an agreement, a contract, [or] a statute . . ." (*Id.*) (quoting *Gilleski v. Cmty. Med. Ctr.*, 765 A.2d 1103, 1106 (N.J. Super. Ct. App. Div. 2001)).[1]

On January 4, 2023, nearly three years after this action was removed to this Court and two years after the deadline to seek to amend pleadings, after all fact and expert discovery was completed and the action was awaiting the scheduling of a trial, plaintiff filed the instant Motion for Leave to File a Third Amended Complaint. (ECF No. 91). Plaintiff seeks substantively to amend the Complaint to add a claim of negligence against the Insurance Defendants. (*See* Proposed Amended Complaint, "PAC," ¶¶ 104-109, ECF No. 91-2).

With that proposed claim, wide-ranging as it is written, plaintiff alleges that the Insurance

---

[1]   Judge Wigenton otherwise denied the motion to dismiss as premature, finding that discovery was necessary to determine the viability of plaintiff's remaining claims. (*Id.* at 3).

Defendants "owed duties to Plaintiff to act as reasonably prudent insurers, claims managers and evidence custodians," which duties defendants negligently breached by failing to notify plaintiff of an alleged conflict of interest; failing to institute or follow proper procedures for activities including the handling of aviation insurance claims, conflict checking, destruction of evidence, and notifying insured of intended evidence destruction; failing to maintain all communications and detailed documentation related to insurance claims; and destroying the wreckage evidence of the subject Crash within five months of decedent's death. (PAC ¶¶ 105-06). Therefore, the proposed claim, though described in plaintiff's briefing as one for negligence arising from the destruction of the wreckage evidence, in fact includes numerous purported negligent acts and omissions concerning defendants' general insurance claims adjustment practices and procedures unrelated to evidence disposal.

Plaintiff further requests to make what is described by her counsel as a housekeeping amendment to eliminate the settled Maintenance Defendants from the caption and body of the Complaint. (*See* PAC, ECF No. 91-2). The Insurance Defendants oppose the Motion in its entirety. (ECF No. 93).

## II.  Discussion

Plaintiff asserts that she seeks leave to add a new cause of action for negligence at this late stage in the litigation based upon new "facts uncovered in discovery," citing roughly three pages of expert deposition testimony from the Insurance Defendants' expert Timothy McSwain, which occurred on December 13, 2022. (*See* ECF No. 91-1 at 3). Underlying the proposed amendment is plaintiff's purported revelation that the Insurance Defendants allegedly "did not have any written procedures" governing their post-accident conduct, including retention of accident evidence, whereas McSwain testified that "written procedures for claims handling are common at two other major aviation insurers[.]" (ECF No. 91-1 at 3). Despite the advanced stage of this litigation, plaintiff asserts that, because "no trial date has been set for this matter, no pre-trial conference is scheduled and no deadline is set for pre-trial motions," the motion is not untimely. (*Id.* at 3-4). Further, in supplemental briefing, plaintiff asserts that she could not have met the January 15, 2021 deadline to amend pleadings, exercising reasonable diligence, because discovery did not commence until November 2020, and, between the date of the Court's initial scheduling conference and the deadline to amend pleadings, plaintiff was occupied by settlement efforts with other defendants and responding to motions. (*See* ECF No. 103 at 2). Plaintiff additionally cites the COVID-19 pandemic as contributing to the delay in seeking to amend. (*See id.* at 2).

Defendants oppose the motion on numerous grounds; those relating to the timing of the proposed amendment include that plaintiff has unjustifiably delayed in seeking to amend, as she was in possession of the information necessary to seek the amendment long before the January 4, 2023 filing of this motion (*see* ECF No. 104 at 3). Specifically, defendants argue that before the deadline for amendments had elapsed on January 11, 2021, plaintiff was aware of what records were (and were not) maintained by the Insurance Defendants through their responses to plaintiff's First Request for Production of Documents. (ECF No. 104). Defendants further argue that "each of the allegations which form the basis of plaintiff's alleged negligence claim were [sic] the subject of the factual testimony by the U.S. Specialty claims handler, Todd Murdoff, which occurred on May 20, 2021," over eighteen months prior to the filing of the instant motion. (*Id.* at 3-4). With

regard to allegation "l" of the PAC, that the Insurance Defendants destroyed the wreckage less than five months after the crash, defendants assert that plaintiff was aware of this fact "before the first pleading was ever filed in this case." (*Id.* at 5). Defendants further argue that they will suffer undue prejudice as a result of the proposed amendment, if permitted, because it injects into the action numerous entirely new factual allegations. Defendants, therefore, would be forced to conduct discovery anew after years of factual and expert investigation into plaintiff's existing claim, or would be unable to "adequately defend this [negligence] claim at trial." (*See* ECF No. 93 at 1, 6).

### A. Legal Standard

Plaintiff initially moved to amend the SAC solely under Federal Rule of Civil Procedure 15, which instructs that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). (ECF No. 91-1 at 5). Pursuant to Federal Rule of Civil Procedure 15, the Court may exercise its discretion to deny leave to amend pleadings where there is "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The "'undue delay' factor recognizes that a gap between when amendment becomes possible and when it is actually sought" can be grounds to deny leave to amend. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017). While simple delay alone may not justify denying leave to amend, "delay that is 'undue'—a delay that is protracted and unjustified—can place a burden on the court or counterparty, or can indicate a lack of diligence sufficient to justify a discretionary denial of leave. As there is 'no presumptive period in which . . . delay becomes 'undue,' the 'question of undue delay requires that we focus on the movant's reasons for not amending sooner' while 'bearing in mind the liberal pleading philosophy of the federal rules.'" *Id.* (quoting *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006); *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). Where the moving party fails to offer a satisfactory reason for the delay in seeking the amendment, the Court is within its discretion to deny leave to amend. *See Arthur*, 434 F.3d at 203.

Plaintiff's initial motion papers did not address how the proposed amendments, which come two years after expiration of the Court's deadline to amend pleadings, satisfy the additional requirement of Federal Rule of Civil Procedure 16. This does not preclude the Court from considering it, and the Court finds it prudent to consider here, where the proposed amendment comes on the eve of trial. *See Sabatino v. Union Twp.*, Civ. A. No. 11-1656 (JLL)(MAH), 2013 WL 1622306, at *3 (D.N.J. Apr. 15, 2013) ("[T]he fact that neither party specifically names Rule 16 or its required good-cause showing does not preclude the Court from applying that standard to plaintiff's motion to amend."). Having become aware at oral argument that the Court would be considering the Rule 16 factors, plaintiff requested and was granted leave to address those factors in supplemental briefing. (*See* ECF Nos. 103, 104).

Under Rule 16, it is well settled that "when a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies. A party must meet this standard before

a district court considers whether the party also meets Rule 15(a)'s more liberal standard." *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); *accord Rogers v. Wilmington Tr. Co.*, No. 21-1473, 2022 WL 621690, at *6 (3d Cir. Mar. 3, 2022); *see also Sabatino*, 2013 WL 1622306, at *3 ("where a motion is required to meet both Rule 16 and Rule 15, the moving party must first make the requisite 'good cause' showing pursuant to Rule 16"); *Kennedy v. City of Newark*, Civ. A. No. 10-1405 (CCC)(JAD), 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) (same).

In assessing whether the movant has demonstrated "good cause" under Rule 16(b)(4), the Court "focuses on the moving party's burden to show due diligence." *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010); *see Rogers*, 2022 WL 621690, at *6 ("The touchstone for assessing whether there was good cause to amend a complaint is whether the moving party showed due diligence in bringing their claims."). Relevant to the due diligence inquiry is "whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Sabatino*, 2013 WL 1622306, at *4.

### B. Analysis

Plaintiff's proposed amendment to the SAC to assert a negligence claim comes too late in this action. This action has been pending for nearly three years, and discovery commenced more than two years before this amendment was sought. (*See* ECF No. 46). All fact and expert discovery have been completed and this case is now poised for trial. For the reasons set forth below, it is the Court's considered view that plaintiff's proposed claim for negligence could and should have been asserted far earlier in the action.

As set forth above, the standards of Federal Rules 15 and 16 bar tardy amendments except in limited circumstances. Where, for example, despite a party's diligence, the amendment could not have been made earlier because the evidence underlying the amendment was not reasonably available to the movant before the deadline to amend pleadings, the amendment may be supported by good cause and the absence of "undue" delay. *See, e.g.*, *Grasso v. Consol. Rail Corp.*, No. CIV. A. 12-398 (KM)(MAH), 2013 WL 3167761, at *6 (D.N.J. June 20, 2013) (granting plaintiff's late motion to amend because plaintiff could not have, through exercise of due diligence, discovered requisite information to make amendment earlier); *Sabatino*, 2013 WL 1622306, at *7 (granting motion to amend despite passage of deadline to amend pleadings where plaintiff filed a proposed amended complaint less than fifty days after discovering new information forming basis of amendment).

Here, plaintiff contends that a deposition of defendants' aviation insurance claims expert that her counsel took on the very last day of expert discovery created the basis of a negligence claim. Specifically, the expert testified that he "wrote claims handling procedures for two of the major insurers" in the industry while being examined by plaintiff's counsel about the Insurance Defendants lack of any "claims handling manual or procedure." (ECF No. 91-3 at 4-5). Based on this vague testimony (which does not specify what types of claims handling policies this expert

wrote, much less whether they were typical of an industry standard), plaintiff posits that she is entitled to assert that the failure of the Insurer Defendants similarly to maintain policies for claims handling constitutes negligence.² (*See* ECF No. 91-1 at 3-4).

The proposed negligence claim does cite the Insurance Defendants' purported failure "to institute proper procedures for aviation insurance claim handling" and "to provide or follow written procedures for aviation insurance claim handling" as two of the twelve grounds for alleging that defendants failed to act as "a reasonably prudent insurers [sic]." (ECF No. 91-2 at 15-16). But it was not any revelation at the deposition of defendants' expert that caused plaintiff to learn that the defendants had no policies on preserving evidence. Indeed, defendants' policies on the treatment of evidence would have been one of the very first things a diligent plaintiff would have sought in written discovery and thus would have been known for years. Furthermore, as defendants' supplemental briefing points out, Mr. Murdoff, the U.S. Specialty insurance claims handler, confirmed in his factual deposition on May 20, 2021, that "there was no written claim procedures nor a written procedure for the disposal of the wreckage." (ECF No. 104 at 4; *see* ECF No. 104-2, Exh. B). The McSwain testimony, therefore, did not make plaintiff aware of anything new in the case that was not, or could not have been, discovered years earlier and therefore does not provide "good cause" for such a tardy amendment. *See Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005) (affirming denial of motion to amend under both Rule 16 and Rule 15 where movant was possession of the facts underlying its proposed counterclaim well before the amendment deadline); *Stallings ex rel. Est. of Stallings v. IBM Corp.*, No. CIV. 08-3121(RBK/JS), 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying motion to amend for lack of good cause and undue delay because movant had knowledge of the potential claim before the deadline to amend). Further, to the extent that any relevant information may be gleaned from the McSwain testimony as to standards for policy keeping and claims handling procedure in the aviation industry, plaintiff's *own* expert could have educated her counsel on such standards and could have done so at a much earlier stage in this action.

Moreover, the subject of the expert's testimony could not be the basis for the nine other "failures" of the defendant insurers cited in the proposed negligence claim. These include the failures "to notify Plaintiff that they had a conflict of interest;" " to institute proper procedures for checking conflicts of interest;" "to provide or follow written procedures for checking conflicts of interest;" "to maintain written records of all pertinent communication relating to the insurance claim arising from the Crash;" "to maintained [sic] detailed documentation of the insurance claim arising from the Crash;" "to institute proper procedures for evidence destruction before the statute of limitations;" "to provide or follow any written procedures whatsoever for evidence destruction before the statute of limitations;" "to institute proper procedures for notifying their insureds of impending or intended evidence destruction;" "to provide or follow any written procedures whatsoever for notifying their insureds of impending or intended evidence destruction;" (PAC ¶ 106, (a)-(c); (f)-(k)). Again, that defendants did not maintain certain policies would have been known years earlier in discovery through the exercise of due diligence. Finally, the last remaining

---

2   The Court notes that defendants' expert did not state what kind of claims handling procedures he wrote or whether they had anything to do with the preservation of property after a property claim was adjusted, so this testimony *per se* appears irrelevant to the issues in this case.

factual allegation of the proposed negligence claim, defendants' destruction of "the wreckage evidence of the Crash less than five months after the death of Andrew Topp," was known to plaintiff prior to the commencement of this action and is entirely unrelated to the McSwain testimony purportedly underlying the proposed amendment. (PAC ¶ 106, (l)). As such, if plaintiff wished to pursue a negligence claim against the Insurance Defendants, that claim could have and should have been raised years sooner. Indeed, a negligence claim for negligent spoliation of evidence was asserted early in this action against other defendants, demonstrating plaintiff's knowledge of the elements that may form such a claim. (*See* SAC ¶¶ 114(d), 114(e)).

That the McSwain deposition testimony cannot justify the proposed post-discovery, eve-of-trial negligence cause of action is underscored by the fact that, in arguing defendants' negligence in the briefing, plaintiff relies primarily on a document that has long been known to her. (*See* ECF No. 91-1 at 1-2; 94 at 7). Plaintiff explains the basis of her negligence claim as follows: "the Insurance Defendants owed a cognizable duty under New Jersey law because they represented to Andy Topp's executrix that they would not scrap the evidence without notice to her and her signature. (Ex. C). The defendants breached that duty and as a result plaintiff has suffered damages." (ECF No. 94 at 7). The factual root of the amendment, therefore, is a September 14, 2018 letter from the Insurance Defendants stating that plaintiff "would be notified 'once a buyer is found for the aircraft salvage.'" (*See* Exh. C, ECF No. 94-3). This correspondence was in plaintiff's possession before she filed the original Complaint in state court. Thus, this is not one of those cases in which the information required for plaintiff to make the amendment was not reasonably available to her until after the deadline to amend. Accordingly, the Court is left to question why plaintiff did not pursue this claim for negligence based on evidence destruction at any point before now. Perhaps the claim was not pursued because the District Court's earlier Opinion dismissing similar counts against other defendants made clear that claims for negligence for failure to preserve evidence are viable under only limited circumstances. (*See* ECF No. 49 at 4-5). Or perhaps there is some other explanation; the Court cannot know, as plaintiff failed to proffer any plausible reason for her delay, let alone good cause, sufficient to justify adding a negligence claim at this late stage in the litigation.

The Court further finds that the delayed proposed amendment would be prejudicial to the Insurance Defendants now that "all fact and expert discovery has been completed during the almost three years this case has been pending." (ECF No. 93 at 6-7). During that time, interrogatories were answered, documents were exchanged, several expert reports were produced and delivered (*see* ECF Nos. 97-101), and approximately twenty-four depositions, including nine expert depositions, were taken. (*See* ECF No. 93 at 6-7). Plaintiff relies on the extensive damages and liability discovery previously conducted by the parties to assert that no further discovery would now be required if the negligence claim is permitted to proceed. (ECF No. 94 at 8-9). The scope of the discovery already done, however, was set by the intentional spoliation claim that makes up the current pleading against the Insurance Defendants. As plaintiff never asserted a claim of negligence against this group of defendants in the three-year pendency of this action, new negligence-related discovery would be necessitated by the proposed amendment. (*See* FAC; SAC). *See Cureton*, 252 F.3d at 273 (finding undue prejudice and denying delayed amendment where "allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories.").

Where, as here, "the tardy amendment will require a reopening of discovery," prejudice to the opposing party is greater. *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990). Defendants argue credibly that, given the numerous and wide-ranging factual allegations encompassed in plaintiff's proposed negligence claim, additional fact discovery would be required if the claim were now permitted. The Court agrees and finds further that the various duties owed by "reasonably prudent insurers" in the aviation industry is a subject for expert opinion. Even if plaintiff does not need such discovery, defendants would have the right to counter the new negligence claim with, at a minimum, new expert reports and testimony. (*See* ECF No. 91-1 at 8). The Court, having therefore considered and compared plaintiff's insufficiently explained delay in seeking to add a claim for negligence, against the prejudice the Insurance Defendants would suffer by engaging in new fact and expert discovery at this late stage, finds that leave to amend must be denied under both Rule 16(b) and Rule 15(a).

Because, for the foregoing reasons, the Court will not allow the proposed substantive amendment to the pleading, it finds no justification to permit the filing of a Third Amended Complaint at this late stage simply to eliminate the settled Maintenance Defendants from the caption and elsewhere in the Complaint. (*See* PAC, ECF No. 91-2). The Court notes that Plaintiff submits no argument as to the propriety of this amendment under either Rule 15 or Rule 16. As such, the proposed amendment is viewed as a mere "housekeeping" amendment, which the Court finds unnecessary, especially as this action is now poised for trial. The Court is confident that it will be clear at the time of trial, from the docket and the history of the action, which defendants remain active in the litigation. This is particularly true in light of the Court's Orders of November 17, 2020 and September 23, 2021, (ECF Nos. 47 and 71), to which all parties stipulated and agreed, which set forth the effect of Plaintiff's voluntary dismissal of the settling defendants for the purposes of trial.

### III.   Conclusion

For the reasons set forth above, Plaintiff's Motion to Amend is **DENIED.** The Clerk of Court is requested to terminate the Motion at ECF No. 91.

**SO ORDERED this 17th day of May, 2023.**

                          *s/ Leda Dunn Wettre*
                          **Hon. Leda Dunn Wettre**
                          **United States Magistrate Judge**

Orig:   Clerk
cc:     Counsel of Record