UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BETH E. FARROW, as executrix of
the estate of Andrew Topp,
deceased,

       *Plaintiff*,

    v.

U.S. SPECIALTY INSURANCE
COMPANY; HCC INSURANCE HOLDINGS,
INC.; CRAWFORD & COMPANY,

       *Defendants*.

No. 20-cv-06588 (MEF)(LDW)

**OPINION and ORDER**

**Table of Contents**

I.     **Background**

    A.    **The Evidence**

    B.    **The Lawsuit**

    C.    **Procedural History**

    D.    **The Motion**

    E.    **The Court's Approach**

II.   **Legal Principles**

III.  **Fraudulent Concealment**

    A.    **Settlement Does Not Defeat the Claim**

    B.    **Counterargument: Lack of Damages**

    C.    **Counterargument: Policy Limits**

    D.    **Counterargument: Mukasa**

IV.   **Other Claims**

    A.    **The Wrongful Death Act**

    B.    **The Survival Act**

V.    **Conclusion**

\*    \*    \*

A pilot died in a plane crash.

After an investigation, an insurance company threw away the wreckage of the plane.

The pilot's estate sued the insurance company, arguing that the estate's claims against certain other defendants were weakened by the insurance company's disposal of the plane debris.

The insurance company now moves for summary judgment.

The motion is granted in part and denied in part.

I.    **Background**

    A.    **The Evidence**

The evidence, as relevant for now, is as follows.

In 2018, a pilot ("Pilot"[1]) was killed in the crash of a small plane he was flying.  <u>See</u> Hourican Declaration, Exhibit A, at 2, 3; Insurance Company's Statement of Material Fact ¶ 1.

Two post-crash investigations were conducted.  One by a federal regulator, the National Transportation Safety Board.  <u>See</u> Hourican Declaration, Exhibit A, at 5.  And another by an insurance company, "the Insurance Company."[2]  <u>See</u> Hourican Declaration, Exhibit L, at 18:2-19:6, 26:4-28:22, 68:13-69:7.

As part of its investigation, the Insurance Company examined the plane wreckage.  <u>See</u> <u>id.</u> at 26:4-28:22, 96:25-97:4; Gagliano Certification, Exhibit 2, at 92:7-93:8.  When it was done, the Insurance Company threw the wreckage away.  <u>See</u> Hourican Declaration, Exhibit L, at 38:17-20.

---

[1]  Andrew Topp.

[2]  U.S. Specialty Insurance Company.  Two related insurance companies are also named as defendants: HCC Insurance Holdings and Crawford & Company.  There is no suggestion from any party that these companies acted separately from each other. Therefore, for ease of reference, the three insurance companies will be referred to, collectively, as "the Insurance Company."

B.  __The Lawsuit__

In April 2020, the executor of the Pilot's estate[3] filed this lawsuit.  She is referred to from here as "the Plaintiff."

The Plaintiff's claims ran against (a) certain repair shops and a mechanic[4] which had allegedly worked on the plane ("the Maintenance Defendants"), and (b) the Insurance Company.

The core of the Plaintiff's claims against the Maintenance Defendants: their work on the plane's engine was flawed, and that helped cause the crash.  <u>See</u> Second Amended Complaint ¶¶ 93-95.

And the core of the claims against the Insurance Company: by getting rid of the plane debris, the Company weakened the Plaintiff's case against the Maintenance Defendants.  <u>See</u> <u>id</u>. at ¶¶ 96-110, 148, 156.  These are spoliation-of-the-evidence arguments,[5] and, per the Plaintiff, they add up to violations by the Insurance Company of: the common-law doctrine of fraudulent concealment (Count I), <u>see</u> <u>id</u>. at ¶¶ 96-110;[6] the New Jersey

---

[3]  Beth E. Farrow.

[4]  Columbia Aircraft Services, Inc. and Wurtsboro Flight Management, LLC are the repair shops.  Daniel Yates was a mechanic for Wurtsboro Flight Management.  <u>See</u> Hourican Declaration, Exhibit E, at 1; Insurance Company's Statement of Material Fact ¶ 7.

[5]  Spoliation of evidence is ruining or destroying evidence.  <u>See</u> Spoliation, <u>Black's Law Dictionary</u> (12th ed. 2024).

[6]  The parties' briefs assume that New Jersey law controls the common-law claim.  <u>Compare</u> Motion for Summary Judgment at 1-2 <u>with</u> Brief in Opposition at 14.  Therefore, it does.  <u>See</u> <u>Marino</u> v. <u>Brighton Gardens of Mountainside</u>, 697 F. Supp. 3d 224, 229 (D.N.J. 2023) (collecting cases) (cleaned up); <u>see</u> <u>also</u> <u>Tryp Hotels Worldwide, Inc.</u> v. <u>Sebastian Hotel, LLC</u>, --- F. Supp. 3d ---, ---, 2024 WL 1327311, at *3 (D.N.J. Mar. 28, 2024); <u>Smith</u> v. <u>CitiMortgage, Inc.</u>, 702 F. Supp. 3d 247, 253 (D.N.J. 2023).  In New Jersey, claims for spoliation are sometimes pursued, as here, under a fraudulent concealment rubric.  <u>See</u> <u>Rosenblit</u> v. <u>Zimmerman</u>, 166 N.J. 391, 406-07 (2001).

Wrongful Death Act (Count VI), see id. at ¶ 149; and the New Jersey Survival Act (Count VII), see id. at ¶ 157.

### C.    **Procedural History**

After this lawsuit was filed, the Plaintiff resolved her claims against the Maintenance Defendants.  One settlement agreement was struck in November 2020, and another in September 2021.  See Docket Entry 31, 47-48; Docket Entry 67, 76-77.

What is left in the case are the Plaintiff's claims against the Insurance Company.

In 2023, the case was reassigned to the undersigned.

### D.    **The Motion**

The Insurance Company now moves for summary judgment as to each of the three claims against it.

The motion is before the Court.

### E.    **The Court's Approach**

After briefly discussing the general standards for assessing summary judgment motions, see Part II, the Court considers the Insurance Company's motion as to each of the Plaintiff's claims.

The motion is denied as to the fraudulent concealment claim, see Part III, and granted as to the two remaining claims, see Part IV.

## II.  **Legal Principles**

The Insurance Company, as noted, has moved for summary judgment.

A court shall grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Dupree v. Younger, 598 U.S. 729, 737 (2023); Cellco P'ship v. White Deer Twp. Zoning Hearing Bd., 74 F.4th 96, 100 (3d Cir. 2023).

"A factual dispute is material if it might affect the outcome of the suit under the governing law."  Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 345 (3d Cir. 2022) (cleaned up); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4

Such a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 203-04 (3d Cir. 2022) (cleaned up).

In assessing a summary judgment motion, "a district court may not make credibility determinations or engage in any weighing of the evidence." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004).  Instead, the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Canada, 49 F.4th at 345 (cleaned up); accord Tolan v. Cotton, 572 U.S. 650, 660 (2014).

### III.  **Fraudulent Concealment**

As noted, the Insurance Company first moves for summary judgment as to the Plaintiff's fraudulent concealment claim.  See Motion for Summary Judgment at 2.[7]

The Insurance Company's main argument: the Maintenance Defendants and the Plaintiff settled their dispute, and the fact of this settlement means that no successful fraudulent concealment claim can now be pressed against the Insurance Company.  See id. at 26.

---

[7] The elements of a New Jersey fraudulent concealment claim:

> (1) That defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation;
>
> (2) That the evidence was material to the litigation;
>
> (3) That plaintiff could not reasonably have obtained access to the evidence from another source;
>
> (4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation;
>
> (5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

Rosenblit, 166 N.J. at 406-07.

Does this argument work as a matter of New Jersey law?[8]

When applying New Jersey law, "the decisions of the [New Jersey] Supreme Court are the authoritative source." Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010).

But as to the argument pressed by the Plaintiff, the New Jersey Supreme Court has not issued a "controlling decision." Popa v. Harriet Carter Gifts, Inc., 52 F.4th 121, 125 (3d Cir. 2022).

Therefore, this Court must "predict," Spence, 623 F.3d at 216, how the New Jersey Supreme Court would decide the issue if it were to reach and resolve it.

###    A.    Settlement Does Not Defeat the Claim

This Court's prediction: the New Jersey Supreme Court would conclude that a prior settlement does not, standing alone, defeat a spoliation-based claim made by a settling party against the entity that disposed of the evidence.

To see why, begin by noting that courts routinely assume that a spoliation claim can be successfully pursued even after a settlement. See Hernandez v. Garcetti, 68 Cal. App. 4th 675, 682 (Cal. Ct. App. 1998) (California law); Builder's Square v. Shaw, 755 So.2d 721, 725 (Fla. Dist. Ct. App. 1999) (Florida law); Stinnes Corp. v. Kerr-McGee Coal Corp., 309 Ill. App. 3d 707, 718 (Ill. App. Ct. 1999) (Illinois law); Hibbits v. Sides, 34 P.3d 327, 330 n.25 (Alaska 2001) (Alaska law); Jones v. O'Brien Tire & Battery Serv. Ctr., Inc., 322 Ill. App. 3d 418, 425 (Ill. App. Ct. 2001) (Illinois law); Shirey v. Flenar, 89 N.E.3d 1102, 1110 (Ind. Ct. App. 2017) (Indiana law); but see Lockard v. Liberty Mut. Ins. Co., 2013 WL 576691, at *3 (W. Va. Oct. 18, 2013) (West Virginia law).[9]

Moreover, this assumption has been made by the Third Circuit. See Williams v. BASF Catalysts LLC, 765 F.3d 306, 322 (3d Cir. 2014) (affirming a district court's denial of a motion to

---

[8]  New Jersey law controls here.  See footnote 6.

[9]  Note that this assumption has been made in cases built like this one: A sues B and C; C is alleged to have spoliated evidence; A and B settle --- and then A or B continues to pursue spoliation damages from C.  See Builder's Square, 755 So.2d at 725; Stinnes Corp., 309 Ill. App. 3d at 718; Hibbits, 34 P.3d at 330 n.25.

dismiss a spoliation-related claim based in part on allegations that the plaintiffs settled on "unfavorable terms").

And in one of its two landmark decisions in this area, see Rosenblit v. Zimmerman, 166 N.J. 391 (2001), the New Jersey Supreme Court leaned heavily on a state intermediate appellate opinion, see id. at 405-06 --- and that opinion allowed a claim for spoliation-related damages to go forward in the post-settlement context, see Viviano v. CBS, Inc., 251 N.J. Super. 113, 128-29 (App. Div. 1991).

In short: courts routinely assume that spoliation-related claims can be successfully pursued even after a settlement.

This Court predicts the New Jersey Supreme Court would take that same approach.

The stepping-off point here is Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81 (2008), the New Jersey Supreme Court's other landmark decision in this area.

In Tartaglia, the Supreme Court held that a party can succeed on a spoliation-related claim after litigating the underlying claim, trial and all.  See id. at 119; see also Rosenblit, 166 N.J. at 407-08.

Under Tartaglia, there are three interests served by allowing for a post-trial, follow-on spoliation claim.  See Tartaglia, 197 N.J. at 121-22.  Per the Supreme Court, these interests justify allowing the spoliation claim, because "[t]he evils to be remedied [by the follow-on claim] are not the same" as what was at stake in the underlying trial.  See id. at 121.

To see the interests served by the follow-on claim, note that Tartaglia envisioned a two-step process.

At Time 1, the jury returns its verdict as to the substantive claim.  See id. at 119.  If there was a car accident, for example: does the driver-defendant need to pay the injured pedestrian-plaintiff?  The jury decides.  See id.

Then at Time 2, the jury stays on --- and assesses whether there are other, separate damages caused by spoliation that the plaintiff may also be entitled to.  See id. at 121.

These are not "duplicative," id. at 120, of the possible damages that were at issue at Time 1.

Rather, they focus on three separate concerns.

7

<u>First</u>, did the plaintiff have to spend more money putting together its case because of spoliation?  <u>See</u> <u>id</u>. at 121.

For example, if the car was sold off and cannot be located, the pedestrian-plaintiff may have needed to run up extra litigation costs.  <u>See</u> <u>id</u>. at 121-22.  Maybe a model had to be created of the car, and then photographed for the jury.  <u>See</u> <u>id</u>. at 122.  Or maybe a search needed to be conducted, to determine the basic structural features of the missing car.  <u>See</u> <u>id</u>. at 121-22.[10]

<u>Second</u>, should the plaintiff be entitled to punitive damages, to impose punishment for evidence destruction?  <u>See</u> <u>id</u>. at 120-21.

As to this question, it might matter, for example, whether the missing evidence was destroyed intentionally to undermine the plaintiff's case, or in a good-faith belief that it was simply no longer needed.[11]

And <u>third</u>, was there a gap between what the plaintiff recovered at the Time 1 trial without the missing evidence, and what she would have recovered with the evidence?  <u>See</u> <u>id</u>. at 120-21.

Imagine that the pedestrian-plaintiff's theory was that she was injured especially badly because the car's front bumper was not solidly set in place.  And imagine further that the bumper evidence could not be put before the jury, because the car had been thrown away before trial.

In this circumstance, there could potentially be daylight between (a) what the plaintiff <u>was</u> awarded by the jury (at the Time 1 trial), and (b) what she <u>would</u> <u>have</u> received from the jury had the car not been disposed of (the subject of the Time 2 proceeding).[12]

---

[10]  Evidence as to these sorts of costs would presumably have had no place in the Time 1 trial.  But such evidence would be part of what the jury hears at the Time 2 proceeding.

[11]  Same point as in footnote 10: such evidence would presumably have had no place in the Time 1 trial.

[12]  There may be situations in which there is no possibility of a gap between (a) and (b).  In such situations, the Time 2 jury would be permitted to consider only the first two of the three <u>Tartaglia</u> interests --- the extra litigation costs to the plaintiff and punitive damages.  <u>See</u> <u>Tartaglia</u>, 197 N.J. at 121.  Some potential examples as to when there might be no possible

In short: under the New Jersey Supreme Court's <u>Tartaglia</u> decision, a follow-on spoliation claim is justified because it can vindicate some or all of the three interests.  The first: compensation for the extra litigation costs of going forward without spoliated evidence.  The second: the possible need for punitive damages.  And the third: payment to close any gap between (a) the without-evidence recovery and (b) what the with-evidence recovery would have been.

                        *    *    *

These three interests are equally in the mix when what happens at Time 1 is not a trial, but rather a pre-trial settlement.

As to the <u>first</u> of the three <u>Tartaglia</u> interests, for example, the plaintiff can be compensated for the costs associated with "hir[ing] additional experts," <u>id</u>., to address spoliated evidence.

Added experts cost more money.  But this is true across the board.  It is true (as in <u>Tartaglia</u>) if the experts testify at trial.  And it is also true when the experts prepare reports and sit for a deposition --- but do not also need to offer testimony from the stand because the case settles and there is no trial.

---

gap between (a) and (b).  <u>First</u>, when the plaintiff has recovered at Time 1 all of the damages she sought --- so having the missing evidence could not have yielded a larger recovery.  Or <u>second</u>, when the plaintiff's Time 1 trial damages, without the missing evidence, exceeded the defendant's assets --- such that a larger with-the-evidence recovery for the plaintiff would have made no bottom-line difference, because the defendant has no more money to give.  <u>Cf</u>. <u>Swick</u> v. <u>N.Y. Times Co.</u>, 357 N.J. Super. 371, 379 (App. Div. 2003) (alluding to relevance in this context of a defendant's bankruptcy).  <u>Third</u>, the jury at Time 1 might have been invited to draw an adverse inference against the defendant because of the missing car --- in which case the impact of the now-gone car would already have been baked into the jury's Time 1 verdict.  <u>See</u> <u>Tartaglia</u>, 197 N.J. at 121.  Or <u>fourth</u>, the plaintiff's theory might have had nothing to do with the bumper or the condition of the car --- in which case, why would it have mattered whether the car was available to the jury?

Extra pre-trial litigation costs that are spent by the plaintiff because of spoliated evidence are not unspent because the plaintiff chooses to settle instead of going to trial.

The second of the Tartaglia interests zeroes in on punitive damages.

Under New Jersey law, one of the fundamental reasons to award such damages is to deter future misconduct by the defendant. See Tarr v. Bob Ciasulli's Mack Auto Mall, Inc., 194 N.J. 212, 217 (2008).

But if defendants who spoliate evidence and go to trial sometimes need to be deterred (as in Tartaglia) --- why not defendants who spoliate evidence, but then opt to pull up short of trial and settle?  There is no reason to think that the former (who go to trial) are likelier to engage in future misconduct than the latter (who do not).

Per Tartaglia, the third and final interest served by a follow-on spoliation claim focuses on the delta between (a) the result that was achieved at trial (without the evidence) and (b) the result that would have been achieved (with the evidence).

But missing evidence can shape settlement agreements just as surely as it can alter trial outcomes.

Indeed, missing evidence can shape settlement agreements in part because it can alter trial outcomes.

The reason: parties to a lawsuit bargain toward settlement in the shadow of their expectations as to how the end-of-the-road trial is likely to turn out.  This is common sense.  And it is reflected in the law.  When courts are required to assess proposed settlements (in the class action context, for example) they routinely look to the relative likelihood of the various possible trial outcomes.  See, e.g., Hacker v. Elec. Last Mile Sols. Inc., --- F. Supp. 3d ---, ---, 2024 WL 1231257, at *13-*15 (D.N.J. Mar. 21, 2024) (comparing proposed settlement to "expected value" --- a value obtained, in part, by "discount[ing]" the defendant's total loss by the plaintiff's likelihood of success at trial) (collecting cases); see generally Robert H. Mnookin & Lewis Kornhauser, Bargaining In the Shadow of the Law: The Case of Divorce, 88 Yale L.J. 950, 968 (1979).

Bottom line: under Tartaglia, a follow-on spoliation claim exists to advance three interests --- and each of these interests is fully in play, whether what comes before is a trial (as in Tartaglia) or what comes before is a pre-trial settlement.

Because Tartaglia's logic applies after settlements no less than it does after trials, the Court predicts that the New Jersey Supreme Court would hold that a prior settlement does not, standing alone, prevent a spoliation-focused claim from being successfully pressed by a settling party against the entity that disposed of the evidence.[13]

The Insurance Company presses three counterarguments to this prediction. These are taken up below, in Part III.B, Part III.C, and Part III.D. None is persuasive.

## B.    Counterargument: Lack of Damages

The Insurance Company's first counterargument: there can be no follow-on spoliation-related claim here because there is no evidence that there was a difference between (a) the settlement (without the missing plane) and (b) what the Plaintiff might have obtained with the plane. See Motion for Summary Judgment at 19.

But there is such evidence.

The Plaintiff received a total of $275,000 in settlements,[14] but she had sued for $2.5 million in damages. See Gagliano Certification, Exhibit 8.

---

[13]  The Insurance Company does not argue that no fraudulent concealment claim is available here because the disposal of the plane wreckage was known to the Plaintiff before she settled. Because the argument has not been made, the Court does not take it up. See Wu v. GSX Techedu Inc., --- F. Supp. 3d ---, ---, 2024 WL 3163219, at *25 (D.N.J. June 25, 2024) (discussing the party presentation rule); Church v. Collection Bureau of Hudson Valley, Inc., 704 F. Supp. 3d 521, 526 n.15 (D.N.J. Nov. 27, 2023) (same).

[14]  The Plaintiff settled with two of the Maintenance Defendants (a repair shop and its employee) for $100,000. See Docket Entry 31, 47-48. The Plaintiff settled with the remaining

And there is evidence that the Plaintiff's ability to carry her burden of proof as to her theory of the accident --- that the Maintenance Defendants did faulty work on the plane's engine, and this caused the crash, see Second Amended Complaint ¶¶ 74-83, 94 --- was undermined by the missing plane debris.  See Hourican Declaration, Exhibit N, at 8; Exhibit O, at 15; Exhibit P, at 18-19; Exhibit T, at 3.[15]

---

Maintenance Defendant (also a repair shop) for $175,000.  See Docket Entry 67, 76-77.

[15]  To be sure, the fact that missing evidence hurts one side may matter less (or not at all) when the same missing evidence hurts the other side, and to the same extent.  But that is not this case.

To unpack the point, think of a car crash case in which the pedestrian-plaintiff says the driver-defendant's right-turn blinker was not on, and in which the driver says her car did not hit the pedestrian, but rather that another car did.  Now imagine that the only evidence other than the parties' testimony is traffic-camera footage --- and that footage is destroyed before anyone gets to see it.  That the footage is missing plainly hurts the pedestrian's case.  It subtracts neutral evidence that might have corroborated his testimony.  But the missing footage hurts the driver's case, too, and in largely the same way.  In this situation, the impact of the missing evidence might cancel itself out; it hurts both sides to an equal and opposite extent, and might simply turn out to be a wash.  (Though note that an equal-and-opposite failure of proof could hurt the plaintiff more than the defendant, because he has the burden of proof.)

But this case does not present an equal-and-opposite situation.  The Maintenance Defendants' theory was that the Pilot improperly installed a fuel line, and that caused the crash.  See Expert Report of William Jeffrey Edwards (August 30, 2021) at 56, 68.  And some photographs taken before the disposal of the plane wreckage provide proof for this defense-side theory.  See id. at 54-56.  The Plaintiff's theory was different.  It was that the Maintenance Defendants did not properly take care of the plane's engine.  See Second Amended Complaint ¶ 93.  But the evidence of that was not reflected in the photographs.  See Hourican Declaration, Exhibit N, at 1, 8-9; Exhibit O, at 1, 15;

And in any event, even if there were no evidence of a gap between (a) and (b) --- that would not matter for now.

There is evidence that the Plaintiff ran up extra litigation costs before the settlements because of the destroyed evidence. Compare Hourican Declaration, Exhibit N (describing pre-trial expert work necessitated by the destroyed plane), Hourican Declaration, Exhibit O (same), and Hourican Declaration, Exhibit P (same) with Tartaglia, 197 N.J. at 121 (holding that expert expenditures are recoverable in this context).

And a follow-on spoliation claim can be successfully pursued to vindicate some of the three Tartaglia interests, even if not all of them are relevant in a particular case. See Tartaglia, 197 N.J. at 121–22.[16]

    **C.   Counterargument: Policy Limits**

The Insurance Company's next counterargument is that there can be no gap here between (a) what the Plaintiff recovered from two of the Maintenance Defendants in a settlement and (b) what the Plaintiff might have recovered from them. See Motion for Summary Judgment at 25; cf. footnote 12.

The reason: those Maintenance Defendants' payout was equal to the full amount of their insurance coverage.[17] See id. Accordingly, the argument goes, even with the plane evidence,

---

Exhibit P, at 10–11, 18–19. It could have been, it is said, discovered in the engine of the now-gone plane. See Hourican Declaration, Exhibit N, at 8–9; Exhibit O, at 15; Exhibit P, at 18–19; Exhibit T, at 3. In short: the missing evidence in this case did not arguably hurt both sides equally. It hurt the Plaintiff's side more than the Maintenance Defendants'.

[16]  The Insurance Company here did not seek partial summary judgment. Rather, it has sought only to argue that the Plaintiff's spoliation-related claim as a whole cannot go forward.

[17]  This argument applies only to one of the settlements, between one repair shop and its mechanic. See Motion for Summary Judgment at 25; see also Docket Entry 31, 47–48; Insurance Company's Statement of Material Facts ¶ 8; Plaintiff's Statement of Material Facts ¶ 8.

there would have been no way for the Plaintiff to get a larger settlement from those Maintenance Defendants.  See id.

But why not?  A defendant's insurance policy does not generally cap what it might be required to pay a plaintiff.  A defendant's damages can sometimes push above its insurance limits.  And when that happens, the plaintiff is not stuck --- the defendant simply has to pay the extra cost out of its own pocket.  See, e.g., Haugh v. Allstate Ins. Co., 322 F.3d 227, 229, 239 (3d Cir. 2003); UTI Corp. v. Fireman's Fund Ins. Co., 896 F. Supp. 362, 368 (D.N.J. 1995); Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc., 457 F. Supp. 1158, 1168 (E.D. Pa. 1978).[18]

### D.    Counterargument: Mukasa

The Insurance Company's final counterargument: there is a state intermediate appellate opinion, Mukasa v. Ise Farms, Inc., 2007 WL 268252 (App. Div. Feb. 1, 2007), that goes the other way. See Motion for Summary Judgment at 26.

Intermediate appellate opinions can be a strong basis for predicting how the relevant state supreme court will ultimately decide an open question.  See Schulman v. Zoetis, 684 F. Supp. 3d 275, 278 (D.N.J. 2023); G.E.M.S. Partners LLC v. AmGuard Ins. Co., --- F. Supp. 3d ---, ----, 2024 WL 3568932, at *9 (D.N.J. July 29, 2024).

But not always,[19] and not here.

---

[18]  Note that the Insurance Company does not argue that the settlement agreements between the Plaintiff and the Maintenance Defendants included any release in favor of the Insurance Company.

[19]  There was a time when federal diversity courts were expected to follow even a single state court decision, or to go with the barest-majority state court rule.  See, e.g., Henry J. Friendly, In Praise of Erie --- And of the New Federal Common Law, 39 N.Y.U. L. Rev. 383, 400-01 (1964) (describing three 1940 Supreme Court decisions --- and criticizing their "excess[es]").  But that is not current law, as a recent Third Circuit case underscores.  See Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A., 98 F.4th 463, 468-69 (3d Cir. 2024).

As to why, start with the facts of Mukasa.  A truck crashed into a car.  See Mukasa, 2007 WL 268252, at *1.  Both drivers' insurance companies inspected the wrecked car.  See id.  And then the car driver's insurer sold off the car.  See id. at *2.  The car driver sued her insurer and the manufacturer of her car.  She settled with the manufacturer.  See id.  But she sought recovery from her insurer, on the theory that by getting rid of the car the insurer had weakened her case against the car manufacturer.  See id.

The Mukasa court affirmed the trial court's summary judgment grant against the plaintiff.  See id. at *4.  And in doing so it said: "plaintiff settled her claim with . . . the manufacturer of the car, and is thus unable to show harm from [the car insurer's] actions."  Id. at *3.

But this is not as telling as it might be.

First, Mukasa was decided before Tartaglia, and so it does not reckon with the Supreme Court's decision in that case.

Second, the quoted passage stands alone.  Mukasa does not explain the basis for its statement or cite cases in support of it.  And the opinion does not cite the other major New Jersey Supreme Court case in this area, Rosenblit.

Third, the Mukasa court explained at length that it was landing where it did because the insurance company was under no duty to preserve the car, see id., and because it did not destroy the car wreckage with any improper intent, see id.

These are the main thrusts of the Mukasa decision.  And they appear to fully justify the decision --- rendering the above-quoted passage dictum.  See generally In re McDonald, 205 F.3d 606, 612 (3d Cir. 2000) ("[D]ictum [is] a statement in a judicial opinion that could not have been deleted without seriously impairing the analytical foundations of the holding --- that, being peripheral, may not have received the full and careful consideration of the court that uttered it.") (cleaned up).

---

Navigators Specialty Ins. Co. v. Citizens Ins. Co. of Am., 2024 WL 3287848, at *5 n.6 (D.N.J. July 3, 2024)

"[A] federal court should be circumspect in surrendering its own judgment concerning what the state law is on account of dicta." McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 662 (3d Cir. 1980).

Fourth and finally, there is a potentially meaningful factual difference between this case and Mukasa.

It was apparently important to the Mukasa court's decision that an insurance company --- with incentives that were closely aligned with the plaintiff's --- inspected the car wreckage before it was disposed of. See Mukasa, 2007 WL 268252, at *3. Per Mukasa, both the plaintiff and the insurance company would have wanted precisely the same thing --- to discover during the inspection any possible defect that could support a suit against the car manufacturer. See id.

This may well have been why the plaintiff was categorically "unable to show harm from [the car insurer's] actions." Id. If there was something to find in the car wreckage, Mukasa can be read to suggest, the insurer would have wanted to find it before getting rid of the wreckage.

This case, though, is different.

Here, an insurance inspection was conducted before the plane wreckage was thrown away, as in Mukasa. But the underlying incentives in this case did not line up as cleanly. The Insurance Company here --- which took part in the relevant inspection --- covered both the Pilot and at least one of the Maintenance Defendants (a repair shop). See Gagliano Certification, Exhibit 1, at 2. Therefore, a vigorous inspection could well have had zero-sum effects --- a plus for one of the Insurance Company's clients (the Plaintiff), could be a negative for another (one of the Maintenance Defendants). This did not make for obviously strong incentives for the Insurance Company to work as hard as it might for the Plaintiff.

In a nutshell: Mukasa banked on the insurer's unalloyed incentives --- but here the insurer's incentives were less straightforward.

In light of the above, the Court does not rely on Mukasa as a basis for predicting how the New Jersey Supreme Court will resolve the relevant issue here.

*     *     *

Where things stand:

The Court predicts that the New Jersey Supreme Court would conclude that a prior settlement does not, standing alone, defeat a spoliation-based claim from being successfully made by a settling party against the entity that disposed of the relevant evidence.

Such an approach flows all but directly from the Supreme Court's decision in <u>Tartaglia</u>.  <u>See</u> Part III.A.  And the Insurance Company's various counterarguments, <u>see</u> Part III.B to Part III.D., are not persuasive.

Given the Court's prediction, the Defendants' motion for summary judgment as to the fraudulent concealment claim is denied.[20]

---

[20] There may be something of an open question as to the standard of proof used to establish any gap between (a) the settlement without the plane and (b) what might have obtained with the plane.  The New Jersey Supreme Court has not yet weighed in, and there are only two relevant New Jersey intermediate appellate cases.  <u>See</u> <u>Novembre</u> v. <u>New Jersey Nets</u>, 2019 WL 3230868, at *5 (App. Div. July 18, 2019); <u>27-35 Jackson Ave., LLC</u> v. <u>Samsung Fire & Marine Ins. Co., Ltd.</u>, 469 N.J. Super. 200, 220–23 (App. Div. 2021).  And the national cases arguably pull in different directions.  <u>See</u> <u>Boyd</u> v. <u>Travelers Ins. Co.</u>, 166 Ill. 2d 188, 196 n.2 (Ill. 1995); <u>Holmes</u> v. <u>Amerex Rent-A-Car</u>, 710 A.2d 846, 850 (D.C. 1998); <u>Oliver</u> v. <u>Stimson Lumber Co.</u>, 297 Mont. 336, 350 (Mont. 1999); <u>Smith</u> v. <u>Atkinson</u>, 771 So.2d 429, 434 (Ala. 2000); <u>Hannah</u> v. <u>Heeter</u>, 584 S.E. 2d 560, 570 (W. Va. 2003); <u>Rizzuto</u> v. <u>Davidson Ladders, Inc.</u>, 280 Conn. 225, 244–45 (2006).  But that is not an argument for granting summary judgment to the Insurance Company.  If anything, it is an argument for denying summary judgment and pushing forward to trial.  <u>See</u> <u>White Motor Co.</u> v. <u>United States</u>, 372 U.S. 253, 263–64 (1963); <u>GNC Franchising, Inc.</u> v. <u>O'Brien</u>, 443 F. Supp. 2d 737, 749 (W.D. Pa. 2006); <u>see</u> <u>generally</u> Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2725 (4th ed.).  This is because factual development at trial may suggest that none of this matters in any practical sense --- because, for example, the answer to a jury interrogatory may indicate that the jury would land on the same verdict regardless of the standard of proof that is used.  <u>See</u> <u>Cohesive Technologies</u> v. <u>Waters Corp.</u>, 130 F.Supp.2d 157, 160 (D. Mass. 2001) ("[A] trial court may . . . press the case forward to determine whether a final disposition on the merits may be reached on less debatable grounds, or on findings that

IV.  **Other Claims**

Take up now the Insurance Company's summary judgment motion as to the two remaining causes of action, the first under the New Jersey Wrongful Death Act (Count VI) and the second under the New Jersey Survival Act (Count VII).

    A.  **The Wrongful Death Act**

The New Jersey Wrongful Death Act supplies a cause of action as follows:

> When the death of a person is caused by a wrongful act, neglect, or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable.

N.J.S.A. 2A:31-1.

Does the New Jersey Wrongful Death Act provide a cause of action when someone disposes of evidence following a death-causing injury?

The New Jersey Supreme Court has not issued a "controlling decision."  Popa, 52 F.4th at 125.

But one way to predict what the Supreme Court will do is "to start with the relevant legal materials, and then analyze them using the interpretive methodology the New Jersey Supreme Court has laid down."  Pinkston v. City of Jersey City, 699 F. Supp. 3d 298, 305 (D.N.J. 2023); see also Schulman, 684 F. Supp. 3d at 278-82.

When interpreting a statute, the New Jersey Supreme Court's method is this: it "consider[s] first the plain language of the statute.  If the language is clear, [the Supreme Court] interpret[s] the statute consistent with its plain meaning."  Oberhand v. Dir., Div. of Tax'n, 193 N.J. 558, 568 (2008); see also, e.g., Richardson v. Bd. of Trs. Police & Firemen's Ret.

---

under settled law would be decisive of the outcome regardless of how the legal issue of first impression might later be resolved in higher courts.") (citing Robert E. Keeton, Judging in the American Legal System § 17.2.1 (1999)).

<u>Sys.</u>, 192 N.J. 189, 195 (2007) ("If the plain language leads to a clear and unambiguous result, then [the] interpretive process is over.").

Here, the plain language is clear.

The Wrongful Death Act extends a cause of action "[w]hen the death of a person is caused by a wrongful act."  And it limits its scope to "an action for damages resulting from the injury" that caused the death.

In other words: to sue someone under the New Jersey Wrongful Death Act, the complained-of act must have "caused" the death.[21]

There is no suggestion of that here.  Disposing of the plane's wreckage could not have caused the plane crash.

Accordingly, the New Jersey Wrongful Death Act does not apply, and the Insurance Company is therefore entitled to summary judgment as to the Plaintiff's claim under the Act.

### B.    **The Survival Act**

Per the New Jersey Survival Act:

> Executors  . . .  may have an action for any trespass done to the person or property, real or personal, of their testator or intestate against the trespasser, and recover their damages as their testator or intestate would have had if he was living.

> In those actions based upon wrongful act, neglect or default of another, where death resulted from injuries for which the deceased would have had a cause of action if he had lived, the executor  . . .  may recover all reasonable

---

[21]  Without issuing any holdings, the New Jersey Supreme Court has spoken about the Wrongful Death Act in a way that assumes the need for causation of this kind.  <u>See</u> <u>Aronberg</u> v. <u>Tolbert</u>, 207 N.J. 587, 593 (2011) ("death . . . [must have been] caused by a wrongful act" to support a Wrongful Death Act cause of action) (cleaned up); <u>Tenore</u> v. <u>Nu Car Carriers, Inc.</u>, 67 N.J. 466, 473 (1975) (statute's aim is to compensate survivors of "those killed by wrongful act"); <u>see also</u> <u>Alfone</u> v. <u>Sarno</u>, 168 N.J. Super. 315, 321 (App. Div. 1979); <u>Alexander</u> v. <u>Whitman</u>, 114 F.3d 1392, 1398 (3d Cir. 1997).

funeral and burial expenses in addition to damages accrued during the lifetime of the deceased.

N.J.S.A. 2A:15-3.

The statute's language is controlling if it is clear, see Part IV.A, and here it is.

The statute allows for recovery that the decedent "would have had if he was living." Id. And the statute allows for "damages accrued during the lifetime of the deceased." Id.

This plainly indicates that a lawsuit cannot be brought under the Survival Act for an action that post-dates the decedent's death.

And this reading of the Act is consistent with how at least one New Jersey intermediate appellate court has seen things, see Fasching v. Kallinger, 211 N.J. Super. 26, 39 (App. Div. 1986), and how the Third Circuit has, too. See Soobzokov v. Lichtblau, 664 Fed. App'x 163, 166 n.2 (3d Cir. 2016) (dicta).

Here, the plane wreckage was thrown away after the Pilot died. See Hourican Declaration, Exhibit L, at 40-41.

Therefore, the New Jersey Survival Act does not supply a cause of action.

**V.    Conclusion**

For the reasons set out above, the Insurance Company's summary judgment motion is denied as to the fraudulent concealment claim (Count I) and granted as to the Wrongful Death Act claim (Count VI) and the Survival Act claim (Count VII).

IT IS on this 4th day of November, 2024, so **ORDERED**.

Michael E. Farbiarz, U.S.D.J.